## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Khalid Karar,                                           Civil No. 07-1853 (DWF/AJB)

                Plaintiff,

                                                            **MEMORANDUM**
v.                                                      **OPINION AND ORDER**

Denise Frazier, Field Office Director,
St. Paul District, Citizenship & Immigration
Service; Alberto R. Gonzales, Attorney
General of the United States; Robert Mueller,
Director, Federal Bureau of Investigation;
Michael Chertoff, Secretary of the Department
of Homeland Security; Emilio Gonzalez,
Director, Citizenship & Immigration Service,

                Defendants.

---

Richard L. Breitman, Esq., Breitman Immigration Law Firm, counsel for Plaintiff.

Mary L. Trippler, Assistant United States Attorney, United States Attorney's Office, counsel for Defendants.

---

## INTRODUCTION

Plaintiff Khalid Karar initiated this suit asking the Court to adjudicate his Form

N-400 naturalization application under 8 U.S.C. § 1447(b). Alternatively, Plaintiff asks

the Court to remand the action to the United States Citizen and Immigration Services

("USCIS") with instructions to expedite the background checks and adjudicate his

application within thirty days. This matter is currently before the Court on Defendants'

Motion to Dismiss and for Summary Judgment. Defendants contend that the Court lacks

subject-matter jurisdiction over this case and argue that the claims asserted against

Defendants Alberto R. Gonzales, Attorney General of the United States ("AG"), and

Robert Mueller, Director of the Federal Bureau of Investigation ("FBI") should be

dismissed pursuant to Fed. R. Civ. P. 56.  Alternatively, Defendants argue that the matter

should be remanded to the USCIS with no time limits for the further processing of

Plaintiff's application.  For the reasons stated below, the Court denies Defendants'

motion and remands to the USCIS for expedited resolution.

## BACKGROUND

Plaintiff is a citizen of Sudan and was admitted to the United States as a lawful

permanent resident on August 20, 1999.  On May 28, 2004, Plaintiff filed an application

for naturalization with the USCIS.

When a person applies to the USCIS for naturalization, the USCIS conducts

several security and background checks to ensure that the person is both eligible for

naturalization and is not a national security or public safety risk.  These background

checks include:  (a) a record check made against DHS's own immigration systems; (b) an

FBI fingerprint check; (c) a check against the Interagency Border Inspection System

("IBIS"); and (d) an FBI name check, which is run against FBI investigative databases.

A USCIS adjudications officer does not adjudicate a naturalization application until all of

the above background security checks are completed.

On June 3, 2004, the USCIS instituted an FBI name check on Plaintiff.  The FBI

received and processed the name check on June 9, 2004.  On December 14, 2004, after

the completion of the original fingerprinting[1] and IBIS checks[2] and pursuant to 8 C.F.R.

§ 335.2, an officer from the USCIS interviewed Plaintiff regarding his naturalization

application.  During this interview, Plaintiff passed the required

English-language-proficiency evaluation and a test concerning her knowledge and

understanding of United States government and history.  *See* 8 U.S.C. § 1423(a)(1)-(2); 8

C.F.R. § 335.2.  The only remaining check to be completed before Plaintiff's adjudication

was the FBI name check.  *See* 8 C.F.R. § 335.2.[3]  As of the September 19, 2007 hearing,

the USCIS had yet to receive any results from the FBI name check.

---

[1]     The USCIS took Plaintiff's fingerprints on July 24, 2004, and January 31, 2007, and submitted them to the FBI.  For Form N-400 applicants, FBI fingerprint reports are valid for fifteen months.

[2]     The USCIS conducted an IBIS check on Plaintiff on April 26, 2007.  IBIS checks must be 180-days current as of the time of the initial interview and at the time of naturalization.

[3]     In an April 25, 2006 Interoffice Memorandum, the USCIS declared that "[f]or purposes of judicial economy, [the USCIS] will promptly cease . . . to schedule any naturalization interviews until all background checks have been completed in a particular case.  This will mean cases will not be scheduled for interview until we have both the results of the fingerprint check and the results of the separate FBI name check process." (Declaration of Attorney Richard Breitman ("Breitman Decl."), Ex. B.)  In a December 21, 2006 Interoffice Memorandum, the USCIS declared, among other things, that "[m]andamus filings will no longer be routinely expedited.  The loss of Social Security benefits or other subsistence, however, continue to be a basis for routine expeditious processing."  (Breitman Decl., Ex. A.)

As this Court has recently observed in another immigration case, it appears that, prior to April 25, 2006, the USCIS officers were in good faith consciously trying to curb the delays that applicants were experiencing by scheduling their interviews with applicants prior to receiving all FBI background checks.  The April and December Memoranda, however, indicate that the USCIS has shifted its policy, now accepting unreasonable delay and promoting such delay by refusing to request expedited

(Footnote Continued on Next Page)

## PROCEDURAL HISTORY

Plaintiff filed a Petition for Writ of Mandamus and Order Granting Naturalization Application on April 11, 2007.  In the Petition, Plaintiff asserts jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1361 (mandamus statute); section 336(b) of the Immigration and Nationality Act; 8 U.S.C. § 1447(b) (jurisdiction over naturalization application); 5 U.S.C. §§ 704, 706 (Administrative Procedure Act); and 5 U.S.C. § 504 (Equal Access to Justice Act).  Defendants then filed a Motion to Dismiss and for Summary Judgment, claiming primarily lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## DISCUSSION

### I.     Standard of Review

"Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).  Dismissal is proper, however, where an attack on the complaint's alleged basis for subject matter jurisdiction reveals that there is no actual basis for jurisdiction.  *Id*.

When the legal sufficiency of the plaintiff's jurisdictional allegations are at issue, the court must take all facts alleged in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140

(Footnotes Continued From Previous Page)
background checks because of unreasonable delay.  The Court does not agree with the change in the USCIS policy and instead believes that an investigation into Defendants' resources might prove beneficial to everyone, as resources that are now spent on litigation could be better spent on processing background checks and adjudicating applications.

(2d Cir. 2001); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  Also, the court has

authority to consider matters outside the pleadings when subject matter jurisdiction is

challenged under Federal Rule of Civil Procedure 12(b)(1).  *Harris v. P.A.M. Transp.,*

*Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).  Consideration of matters outside the

pleadings under such circumstances does not convert the proceedings to a Rule 56

summary judgment motion.  *Id.*

## II.    Subject Matter Jurisdiction

Federal subject matter jurisdiction is proper only if Congress has expressly

conferred it.  *State of Mo. ex rel. Mo. Hwy. & Transp. Comm'n v. Cuffley*, 112 F.3d 1332,

1334 (8th Cir. 1997).  Congress has deemed that federal courts have jurisdiction in "all

civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1331.

Here, in addition to asserting federal question jurisdiction under § 1331, Plaintiffs

assert that this Court has jurisdiction based on 8 U.S.C. § 1447(b); 28 U.S.C. § 1361

(mandamus statute); section 336(b) of the Immigration and Nationality Act; 5 U.S.C.

§§ 704, 706 (Administrative Procedure Act); and 5 U.S.C. § 504 (Equal Access to Justice

Act).  The Court finds that, at a minimum, it has jurisdiction based on 8 U.S.C. § 1447(b).

The United States Code states that "[b]efore a person may be naturalized, an

employee of the Service, or of the United States designated by the Attorney General,

shall conduct a personal investigation of the person applying for naturalization[.]"

8 U.S.C. § 1446(a).  The Code further provides that:

> [t]he Attorney General shall designate employees of the Service to conduct
> examinations upon applications for naturalization . . . .  The record of the
> examination authorized by this subsection shall be admissible as evidence
> in any hearing conducted by an immigration officer under section 1447(a)
> of this title.  Any such employee shall, at the examination, inform the
> applicant of the remedies available to the applicant under section 1447 of
> this title.

8 U.S.C. § 1446(b).

> Section 1447 then provides the following:
>
> If there is a failure to make a determination under section 1446 of this title
> before the end of the 120-day period after the date on which the
> examination is conducted under such section, the applicant may apply to
> the United States district court for the district in which the applicant resides
> for a hearing on the matter.  Such court has jurisdiction over the matter and
> may either determine the matter or remand the matter, with appropriate
> instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).  Therefore, a district court has jurisdiction over naturalization

applications in two contexts:  first, if an application has been denied, an applicant may

seek a *de novo* review of the denial in district court, but only "after a hearing before an

immigration officer under section 1447(a)," 8 U.S.C. § 1421(c); and second, an applicant

may petition a district court for a hearing if the USCIS fails to make a determination on

their application "before the end of the 120-day period after the date on which the

examination is conducted."  8 U.S.C. § 1447(b).

Here, the parties dispute what the term "examination" refers to, and therefore

dispute what triggers the 120-day period in § 1447(b).  Plaintiff contends that the

"examination" refers to the application interview conducted by the USCIS.  Citing

*Danilov v. Aguirre*, 370 F. Supp. 2d 441, 443 (E.D. Va. 2005)[4] and *Walji v. Gonzales*, 489 F.3d 738 (5th Cir. June 19, 2007),[5] Defendants contend that the "examination" is a process, which is not complete without the finalized FBI name check. Therefore, because the USCIS has not received all of the results from the background checks here, Defendants assert that the 120-day period has not yet expired. Accordingly, Defendants argue that the Court lacks subject matter jurisdiction. The Court disagrees.

This Court continues to decline to follow the *Danilov* line of cases and instead concludes that the term "examination" in § 1447(b) means the applicant's interview with USCIS, not the information-gathering process in its entirety. *See Repeshchuk v. Gonzales*, No. 07-2017 (RHK/AJB), 2007 WL 2361450, at *3-*4 (D. Minn. Aug. 15, 2007) (citing cases and holding that "federal-court jurisdiction exists over a naturalization application 120 days after the date of the applicant's *interview*, if the application has not been adjudicated in that time") (emphasis in original). The Court finds § 1447(b) unambiguous. The section states that the district court shall have jurisdiction over the

---

[4]    The *Danilov* court held that an "examination" for purposes of § 1447(b) "is not a single event, but instead is essentially a process the agency follows to gather information concerning the applicant." 370 F. Supp. 2d at 443.

[5]    In their briefing, Defendants urge the Court to follow *Walji*, which originally adopted *Danilov's* approach. On September 14, 2007, however, the Fifth Circuit Court of Appeals withdrew its June 19, 2007 opinion, substituting a new opinion and reversing the district court's finding that the 120-day period begins to run after the background investigation is complete. *Walji v. Gonzales*, No. 06-20937, 2007 WL 2685028 (5th Cir. Sept. 14, 2007). Defendants acknowledged the Fifth Circuit's reversal at oral argument. Defendants, however, still maintain as their position that the 120-day period does not run until after the FBI name check is completed. The Court disagrees with Defendants' position, and notes that even if the Fifth Circuit had not withdrawn its June 19, 2007 opinion, the Court would have departed from the Fifth Circuit's opinion.

matter after "*the date on which* the examination is conducted."  8 U.S.C. § 1447(b)

(emphasis added).  The phrase "the date on which" indicates a single date for an

examination to take place.  A process could occur over a span of several dates.  *See also*

*Repeshchuk*, 2007 WL 2361450, at *3 ("[I]f the Court were to equate the term

'examination' with 'process,' the relevant statutory language would, in essence, be

transformed into:  'the date on which the process is conducted.'  Such language would be

ambiguous and would not provide a cognizable date after which an applicant would apply

to the district court for relief[.]").

Further, as explained by the *Repeshchuk* court, construing "examination" to mean

"process" is not consistent with the USCIS's use of the terms "examination" and

"investigation" in its regulations.  Specifically, 8 C.F.R. § 335.1, entitled "Investigation

of applicant," states that the USCIS "shall conduct an investigation of the applicant,"

including a review of pertinent records, police-department checks, a neighborhood

investigation, and an employment-background check.  Section 335.2, on the other hand,

which is entitled "Examination of applicant," states that, after submitting a naturalization

application, an applicant:

> shall appear in person before a Service officer designated to conduct
> examinations pursuant to § 332.1 of this chapter.  The examination shall be
> uniform throughout the United States and shall encompass all factors
> relating to the applicant's eligibility for naturalization.  The applicant may
> request the presence of an attorney or representative . . . .

8 C.F.R. § 335.2(a).  In addition, § 335.2(b), entitled "Completion of criminal

background checks before examination," states that the USCIS "will notify applicants for

naturalization to appear before a [USCIS] officer for initial examination on the

naturalization application only after [USCIS] has received a definite response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b).[6]

Therefore, the regulations treat the FBI background check as a separate event from the "examination." In addition, the regulations use the term "investigation" to describe what Defendants refer to as a "process" that includes the various types of background checks and the term "examination" to describe a single event that takes place in person before a USCIS officer. This supports the Court's construction that the term "examination" refers to the USCIS interview, as opposed to the entire process that includes the FBI background check. Finding otherwise would create a situation where the FBI could potentially delay adjudication for an indefinite amount of time. Such effect would run contrary to Congress' intent, which was to curb the delays that adjudications were facing in the district court system.

Here, there is no dispute that more than 120 days elapsed between Plaintiff's USCIS interview (December 14, 2004) and the filing of Plaintiff's Petition (April 11, 2007) and that his application has not been finally adjudicated. Therefore, pursuant to 8 U.S.C. § 1447(b), subject-matter jurisdiction exists.[7]

_____

[6]     Here, the USCIS conducted the initial examination before the FBI completed the name check.

[7]     Because the Court finds that subject matter jurisdiction exists under 8 U.S.C. § 1447(b), the Court need not address whether subject matter jurisdiction exists under the other basis alleged in Plaintiff's Petition.

## III.    Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Here, Defendants assert that summary judgment should be granted as to Defendants Alberto R. Gonzales, AG, and Robert Mueller, Director of the FBI, because Defendants contend that § 1447(b) does not apply to the AG or FBI because they have no authority to adjudicate applications for naturalization.  Plaintiff disagrees.  Plaintiff

asserts that the Attorney General does have the authority to naturalize persons as citizens of the United States and that the Secretary of Homeland Security can compel the FBI, which is the principal investigative arm of the United States Department of Justice, to act.

The Court finds that because the Defendants briefed this issue in such a conclusory fashion, they did not meet their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. First, it is not disputed that the FBI is responsible for completing an applicant's name check. Second, even assuming Defendants assertion that was made at oral argument to be correct that the authority to naturalize has been transferred from the Attorney General to the Secretary of the Department of Homeland Security, see Pub. L. No. 107-296, § 1512(d), the Attorney General may still play a role in the naturalization process. *See* Pub. L. No. 107-296, § 1102(g)(1) & (2) (stating in part that "[t]he Attorney General shall establish such regulations, . . . issue such instructions, review such administrative determinations in immigrations proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section"). Therefore, Defendants' motion for summary judgment is denied.

## IV. Remand

Plaintiff asks the Court to determine the matter on its merits rather than remanding the matter to the USCIS. Plaintiff also asserts that 8 U.S.C. § 1447(b) requires the Court to either determine the case itself, or remand the case with appropriate instructions, but does not allow for the Court to remand the case with no time limits and no instructions.

Defendants, on the other hand, ask that if the Court finds jurisdiction—which it does—to have the Court remand the matter to the USCIS without time limits.  In response, Plaintiffs request that if the Court chooses to remand the matter to the USCIS that it does so with specific instructions that direct the FBI and the USCIS to complete Plaintiff's name check and application adjudication within thirty days.

Defendants point out that the FBI processes name checks and the USCIS generally adjudicates applications on a first-in/first-out basis.  Defendants assert that Plaintiff has not shown any humanitarian reason to have his application adjudicated before others that are pending.  Plaintiff contends that there are reasons to have his application adjudicated immediately.  Specifically, Plaintiff points out that he has been engaged to a woman living in Sudan since 1999, which he would like to bring to the United States.  Because of the delay in the application process, Plaintiff asserts that his fiancée's family is now questioning Plaintiff's intentions and contends that his fiancée's reputation could be damaged if he is unable to fulfill his promise of engagement.  In addition, Plaintiff asserts that he would like to bring his father to the United States for medical reasons.  Therefore, Plaintiff asserts that his name check delay causes prejudice to him because he has to wait until his adjudication is granted before he can petition to have his father and fiancée join him in the United States.  Defendants, on the other hand, assert that Plaintiff's claim for prejudice is not supported because Plaintiff's fiancée or father can seek their own visas and/or Plaintiff could travel to Sudan to visit on a green card.

Defendants assert that some applications simply remain pending longer due to the fact that some files must be retrieved and manually reviewed.  In addition, Defendants

assert that some delays are justified because the FBI name check has revealed derogatory information on the applicant.  Defendants point out that after September 11, 2001, the FBI expanded its search criteria to access reference files in addition to the main files that had been accessed prior to September 11.  In addition, Defendants point out that in December 2002 and January 2003, the former Immigration and Naturalization Service resubmitted 2.7 million name check requests to the FBI, which resulted in the FBI processing more than 440,000 of the re-submissions.  Defendants assert that at least part of the delay in the processing of the regular submissions from the USCIS can be attributed to these 440,000 re-submissions.

The Court, at this stage, is unable to adjudicate Plaintiff's application *de novo*. The Court acknowledges Plaintiff's frustration with the continued delay in the adjudication of his application.  But, "[t]he FBI criminal background check is a vital piece of information and absent such information the court system is simply not equipped with the resources necessary to ensure a thorough investigation prior to the giving of the naturalization oath."  *Essa v. United States Citizenship and Immigration Servs.*, No. CIV051449 (DSD/JJG), 2005 WL 3440827, at *2 (D. Minn. Dec. 14, 2005).  In addition, "to adjudicate petitioners' applications at this stage would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application."  *Id*.  For these reasons, remanding the matter to the USCIS is appropriate because the USCIS can properly make a final determination on Plaintiff's naturalization application once the FBI name check has been completed.

In doing so, the Court also acknowledges that the USCIS's burdens have increased since September 11, 2001, and acknowledges that the USCIS depends on the FBI for the information that it needs to make a thorough and proper adjudication.  However, the USCIS still has "a non-discretionary duty to process the application within a reasonable time."  *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D. Tex. 2005).  "At some point, USCIS's delay becomes unreasonable."  *Khan v. Frazier*, No. 06-1560 (MJD/RLE), 2007 WL 270413, at *4 (D. Minn. Jan. 29, 2007).  Here, the Court finds it unreasonable for the Plaintiff to have to wait for his adjudication for more than three years, especially in light of the fact that neither the USCIS nor the FBI have given her a specific reason for the delay.[8]  Weighing the burdens of all of the parties involved in light of the facts presented before the Court, including the administrative record, the Court concludes that Defendants request for unfettered leave to continue the processing of Plaintiff's application is unreasonable.  But the Court also concludes that Plaintiff's

---

[8]      Defendants did provide the Declaration of Michael A. Cannon, the Section Chief of the National Name Check Program Section at the Headquarters of the FBI, which generally addressed the National Name Check Program, the Central Records System, the resolution rate, the growth of the Name Check Program, and USCIS name check requests.  As to Plaintiff, Cannon only stated the following:

> The name check request for plaintiff Khalid Karar was received by the FBI from USCIS on or about June 7, 2004, and has not been completed.  The FBI is performing its check in response to USCIS's request in accordance with procedures outlined above.  The results of the name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol.

(Declaration of Michael A. Cannon at 8.)  Neither Cannon nor Defendants have alleged that Plaintiff's case has required any specific additional investigation beyond the initial background check, nor have they addressed why Plaintiff's name check is delayed.

request for a thirty-day completion deadline is unreasonable.  Instead, the Court

concludes that a time limit of 120 days for completion of the FBI name check and the

USCIS adjudication is reasonable.

## CONCLUSION

Based on the files, records, and proceedings herein, the arguments of counsel, and

for the reasons stated at the hearing, this Court concludes that it has subject matter

jurisdiction over the present cause of action and that the matter shall be remanded to

United States Citizenship and Immigration Services ("USCIS") with instructions to

complete the administrative process and make a final determination after the Plaintiff's

name check has been completed.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 4) is

**DENIED**.  Pursuant to 8 U.S.C. § 1447(b), Plaintiff 's request for adjudication of his

Application for Naturalization is **REMANDED** to the USCIS with instructions to the

USCIS and other defendants to complete all background checks, including an FBI name

check, as necessary to fully process and issue a determination on Plaintiff's naturalization

application within **120 days**.[9]  Upon completion of the adjudication, the USCIS shall

promptly inform this Court and the Plaintiff of its decision.

---

[9]     The Court ruled off the bench at the hearing on September 19, 2007, and issued an
Order with a Memorandum Opinion to follow on that date as well.  Therefore, the
120-day time limitation shall be calculated from September 19, 2007, which is the date
the Court issued its Order in this matter.

2.      Defendants are ordered to show cause to this Court for any failure to comply with the substance of the Court's Order and to do so within **30 days** of the expiration of the 120-day deadline set forth herein.  This Court will retain jurisdiction over the matter in the interim to ensure that the USCIS complies with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  October 12, 2007                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court